TITLE GUARANTEE AND TRUST COMPANY, EXECUTOR, ETC., OF CHARLES S. BAYLIS, DECEASED, PROSECUTOR, v. HOWARD ISHERWOOD, SURROGATE, DEFENDANT.

Argued February 19, 1924—Decided May 6, 1924.

.Taxation—Succession—Residence of Deceased Involved—Evidence Held to Indicate that He was a Non-resident and Estate Not Subject to Tax.

On *certiorari* to order appointing appraiser for succession tax purposes.

Before Justices TRENCHARD, PARKER and CAMPBELL.

For the prosecutor, *George W. C. McCarter*.

For the defendant, *Theodore `Rurode* (*Edward L. Katzenbach*, attorney-general, on the brief).

PER CURIAM. ·

The question for determination is whether the general estate of Charles S. Baylis, deceased, is liable to succession tax under our statute, as in force at the time of his death. He died in March, 1903, and the statute applicable is section 1 of the act of 1894 (*Pamph. L., p.* 318), appearing in the general statutes of 1895 (at *p.* 3339). If at the time of his death he was "a resident of this state" the estate is generally liable to the tax provided in the act of 1894, otherwise not. For the purposes of administration and settlement of that estate, it seems to have been assumed that he was a resident of New York; his will was proved there, and the executor accounted to the authorities of this state for such property as had its *situs* here, and was taxable as property of a non-resident. But in 1923 the defendant, as surrogate of

Essex county, inaugurated proceedings to tax the entire estate as that of a resident. The present writ was allowed, and the disposition of it turns on the mixed question of law and fact as to the residence of Mr. Baylis at the time of his death. Testimony was taken on this point and has been duly considered.

Mr. Baylis was born in Brooklyn, and up to the time of his marriage was concededly a resident of New York state. In 1897 he married one of the daughters in a prominent Newark family; bought a home in Newark, voted there, and this status continued for several years. Unquestionably, his legal residence changed to New Jersey. His will, made in 1901, declares that he is "now residing" in Newark. So the inquiry develops into an ascertainment whether this residence was later changed or abandoned. The settlement of this question, after it has lain dormant for twenty years, is a troublesome one, but the legal representative is in no way to blame for that; and while the burden of showing a change of residence may be on the executor, it is entitled to some consideration, under the circumstances, on the *quantum* of proof after the lapse of so long a period.

It appears without question that Baylis and his wife tired of Newark, found the social life there uncongenial, and in the spring of 1902, sold their house, and having no family ties took up their abode at a hotel in New York City. He had purchased from his wife's family a summer cottage on the Jersey shore, at Low Moor, and occupied it in the summer of 1902, but only for summer purposes. In the fall they went back to the same hotel in New York, and remained there until January, 1903, when they started on an extended foreign trip; and he died while they were abroad.

On the question of intent to change the state of residence, a sister of Mrs. Baylis testified in part:

"*Q.* Do you recall any statements or declarations made by Mr. Baylis, or by Mrs. Baylis, in his presence, with respect to their moving away, or as to why, or for how long, and all about it?

"*A*. They had gone for good; they sold their house; they had no idea of coming back, and they went because they got tired of Newark.

"*Q*. It was a declaration to that effect which you heard?

"*A*. Yes.

"*Q*. Can you recall any more specifically what was said?

"*A*. Yes; my sister was very fond of society, and she said, 'We like everybody here, but no one returns it,' and she was bored; she would like to go where she had more of something doing." \* \* \*

"*Q*. Are you able to say whether or not Mr. Baylis, after the sale of the house, 1023 Broad street, in Newark, intended to make his home in Newark thereafter?

"*A*. Never.

"*Q*. After they moved away from Newark, where did Mr. Baylis intend to make his home?

"*A*. At the Waldorf, I think; that is where he was up to the time he went to Egypt.

"*Q*. You say 'I think'; have you any doubt that it was in New York City?

"*A*. Not the slightest; they went to New York for the rest of their lives. \* \* \*

"*Q*. Did he ever say anything to you about his residence and where it was after he sold his Newark house?

"*A*. Yes. He never expected to come back to Newark. They moved to New York.

"*Q*. But didn't they, as a matter of fact, move to Low Moor, after they sold their Newark house?

"*A*. They went there for the summer.

"*Q*. Did Mr. Baylis ever state to you directly where he expected to continue his residence after he sold the Newark house, in 1902?

"*A*. Yes, often.

"*Q*. Well, what did he say?

"*A*. They said they were going to New York to live. Going to New York to live.

"*Q*. When was that?

"*A.* When they left Newark. They left Newark because they wanted to live in New York.

"*Q.* Well, can you remember Mr. Baylis' exact words with reference to that?

"*A.* No, I couldn't say I do. It is twenty some years. I couldn't swear to his exact words. \* \* \*

"*Q.* And when the Newark house was sold in the spring of 1902, you said that Mr. Baylis intended to go and live in New York?

"*A.* Yes."

And a brother of Mrs. Baylis testified:

"*Q.* Do you know whether he had any other home than the Low Moor home at the time of his death?

"*A.* Well, I cannot call the Low Moor house a home, because it was a mere summer residence, and when he moved to New York he made his home there, as I understood it."

Testimony of statements made by Mrs. Baylis tends to corroborate the above, but we prefer not to rely on it, because of doubt as to the technically evidential character. Facts are lacking as to where Mr. Baylis voted and paid personal tax after selling the Newark house, though there is positive testimony that he never voted at Low Moor or treated it otherwise than as a temporary summer cottage.

We have no difficulty, however, in concluding on the testimony and other evidence that the testator in 1902 definitely abandoned his residence in New Jersey with intent to become, as he had been before his marriage, a resident of New York. As a result of this finding, the order and proceedings thereunder will be set aside, but without costs.